United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEL A.,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, et al.,<br><br>Defendants. | Case No. 4:24-cv-08215-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14, 15 |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings.  Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

## I.    BACKGROUND

Plaintiff filed an application for Title XVI benefits on December 21, 2021, asserting disability beginning April 1, 2020. (Administrative Record ("AR") 16, 325-26, 370-90.)  The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 16, 205-09, 214-19.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on October 11, 2023. (AR 16, 220.) A rehearing was held on May 29, 2024 due to defective audio at the first hearing. (AR 16.)  At the May 29, 2024 rehearing, both Plaintiff and a vocational expert ("VE") testified. *Id.*

Following the hearing, the ALJ denied Plaintiff's application on July 31, 2024.  (AR 16-30.)  A request for review of the ALJ's decision was filed on August 29, 2024.  (AR 322-24.)  The

Appeals Council denied Plaintiff's request for review on October 9, 2024.  (AR 1.)

On November 20, 2024, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  On March 24, 2025, Plaintiff filed the motion for summary judgment.  (Pl.'s Mot., Dkt. No. 14.)  On April 18, 2025, Defendant filed an opposition and cross-motion for summary judgment.  (Def.'s Opp'n, Dkt. No. 15.)  Plaintiff filed a reply on May 2, 2025.  (Pl.'s Reply, Dkt. No. 16.)

### II.    LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.*  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner proceeds to step three and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

United States District Court
Northern District of California

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f).  RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III.    DISCUSSION

Plaintiff challenges the ALJ's decision on four grounds: (1) the ALJ's erred in weighing certain medical opinions, (2) the ALJ's erred in evaluating Plaintiff's statements and those of her care coordinator, (3) the ALJ erred in determining that Plaintiff's substance abuse is material to a finding of disability, and (4) the ALJ erred in determining Plaintiff's RFC.

### A.    Medical Opinions

Plaintiff argues that the ALJ erred in evaluating the following: (1) Bay Area Community Services treatment and opinion from MSW Intern Amanda Joy and clinical supervisor Brittany Oliver, LCSW, and (2) the opinion of examining psychologist Dr. Laura Catlin. (Pl.'s Mot. at 6-7.)  While the ALJ found the opinions of Dr. Catlin and Brittany Oliver persuasive during periods of drug and alcohol abuse because they were consistent with the record, he found them "unpersuasive during periods of sobriety." AR 23, 28.

Under the updated regulations, the SSA "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  20 C.F.R. § 416.920c(a).  Instead, each medical opinion's persuasiveness is evaluated based on various factors, the most important of which are "supportability" (the extent to which the medical opinion is supported by relevant and objective medical evidence) and "consistency" (the extent to

3

which a medical opinion is consistent with evidence from other medical and nonmedical sources). *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Id.* An ALJ, however, "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (internal quotation omitted).

### i.    Bay Area Community Services ("BACS")

Plaintiff's treating clinician at Bay Area Community Services was MSW Intern Amanda Joy, under the supervision of clinical supervisor Brittany Oliver, LCSW, and together they furnished a source statement regarding her mental limitations, dated July 20, 2023. AR 881-886.

As Plaintiff's treating clinical social worker at BACS, Joy met with Plaintiff regularly for at least 15 individual sessions until March 11, 2024, when another social worker took over Plaintiff's case. AR 37-77.[1] The Mental Impairment Questionnaire ("MIQ") that Joy and Oliver completed in July 2023 reports that Plaintiff first began treatment with BACS in September 2022 with weekly contact. AR 881, 886. The MIQ lists Plaintiff's primary diagnoses as Bipolar I Disorder, Current or Most Recent Episode Manic; and Posttraumatic Stress Disorder. AR 881. They also note she was diagnosed with ADHD in 2005 and reported that Plaintiff was not currently taking medications, but, that due to her mental health symptoms and disorganization, she struggles with medication management and benefits from regular, consistent treatment with her care coordinator. *Id.* They observed that she presents with manic symptoms including pressured speech, grandiose ideation, flight of ideas, distractibility, and excessive involvement in high-risk behaviors, and presents with symptoms of PTSD including hypervigilance, agitation, difficulty

---

[1] The Court notes that the BACS treatment notes were not in the record at the time of the hearing, but were subsequently submitted. (Pl.'s Mot. at 9 (citing AR 37-117).) Despite being notified by counsel that the BACS records had been requested and remained outstanding, the ALJ noted that no new records had been submitted before the decision was rendered. AR 16, 500. As result, the record appears to have not been complete at time of decision.

United States District Court
Northern District of California

trusting others, and reports distressing memories of traumatic events. AR 881-82. Joy and Oliver reported that Plaintiff also experiences sciatica that is exacerbated by her mental health issues. AR 883.

Joy and Oliver assessed marked to extreme limitation across several areas of Plaintiff's work-related mental functioning consistent with Listings 12.04 and 12.15, including: a markedly limited ability to remember locations and work-like procedures; an extremely limited ability to maintain attention and concentration for two-hour segments, perform activities within a schedule, sustain an ordinary routine without special supervision, work with or near others without being distracted by them, and perform at a consistent pace; and markedly limited ability to ask simple questions, request assistance, and accept instructions/respond appropriately to criticism from supervisors. AR 883-84. They elaborated that Plaintiff is easily distracted and can become confused, that she struggles with routine decision-making, that her behavior can be disruptive and her reaction to criticism and stress can be unpredictable, and that she tends to be disorganized. AR 883-85.

The ALJ found that the opinion of Oliver was unpersuasive during periods of sobriety because "they are unsupported by the claimant's jail records, which show that the claimant denies all symptoms and refuses treatment, with essentially normal mental status examinations during periods of carceral sobriety." AR 23, 28. Furthermore, with no mention of Joy, the ALJ found that Oliver was not an acceptable medical source, because Plaintiff provided no records showing that Oliver had rendered treatment. AR 28. Joy was the treating social worker, and Oliver was her supervisor. While opinions from social workers are not accepted medical sources under the Social Security regulations, the ALJ must still "give 'germane' reasons for discounting the opinion of a social worker." *Kroeger v. Saul*, No. 18-CV-00389-SI, 2019 WL 4451025, at *16 (N.D. Cal. Sept. 17, 2019) (citing *Delegans v. Berryhill*, 766 Fed. App'x 477, 480 (9th Cir. 2019)). In discounting this opinion because Oliver did not treat Plaintiff, the ALJ did not consider that Joy did.

Accordingly, the Court finds that the ALJ erred by failing to provide a valid reason for rejecting the opinion of Joy and Oliver. On remand, the ALJ shall also consider the BACS treatment notes. *See* AR 37-117.

### ii. Dr. Laura Catlin

Dr. Catlin conducted a forensic telephonic evaluation of Plaintiff in June 2023, which included administering a battery of tests in addition to the clinical interview and record review, and an assessment of Plaintiff's work-related mental limitations. AR 871-880. Dr. Catlin's findings are detailed in a 10-page report. *Id.* Dr. Catlin diagnosed Plaintiff with ADHD – Inattentive Type; PTSD; and Stimulant Use Disorder – in full remission. AR 875. Dr. Catlin found marked impairments in several areas of work-related functioning, including the ability to: recognize a mistake and correct it; handle conflicts with others; complete tasks in a timely manner; ignore or avoid distractions; sustain an ordinary routine and regular attendance at work; respond to demands; and adapt to changes. AR 877-878.

The ALJ found that Dr. Catlin's opinion during periods of sobriety was "unsupported" by Plaintiff's jail records. AR 23, 28. To the extent that the ALJ infers that Dr. Catlin's opinion is inconsistent with the jail records based on her outright denials of prior treatment, symptoms, and hospitalization—which we know from the medical evidence was untrue—the jail records mention that Plaintiff reported PTSD symptoms due to sexual assault, which is consistent with Dr. Catlin's diagnosis. *See* AR 937, 945. For the reasons discussed below, the Court finds that Plaintiff may have denied symptoms and declined treatment in jail for a host of reasons, including incentives to not be truthful and the highly structured environment. *See* discussion, *infra,* Part III.C.

The ALJ further found that Dr. Catlin's evaluation provided "limited insight" because it was telephonic in nature, and that Dr. Catlin's assessment of stimulant disorder in full remission is based on Plaintiff's subjective report and inconsistent with Plaintiff's treatment records. AR 28. To the extent that the ALJ discounted Dr. Catlin's opinion was based on a one-time telephonic examination, that was in error. Rather, Dr. Catlin stated that she based her opinion not only on the examination, but also on a review of Plaintiff's medical records from Highland Hospital. AR 871. Thus, this is not a legitimate reason for rejecting Dr. Catlin's opinion.

Accordingly, the Court finds that the ALJ erred by failing to provide an explanation for rejecting Dr. Catlin's opinion that was supported by substantial evidence.

//

**B.    Credibility of Plaintiff and her Care Coordinator**

    **i.    Plaintiff's Credibility**

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony. (Pl.'s Mot. at 15.)  In the absence of affirmative evidence of malingering, the ALJ may reject a claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

"A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing claimant to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation omitted).  Thus, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotations omitted).

Here, Plaintiff alleged disability due to ADHD, depression, anxiety, sciatica, leg injury, obsessive-compulsive disorder, PTSD, head trauma, and eating disorder. AR 25. The ALJ determined that Plaintiff's allegations were unsupported by the medical record, because, during her period of carceral sobriety at Santa Rita Jail, she denied all mental impairments and symptoms, and she declined treatment. AR 25-26. Everyone agrees that Plaintiff is not a reliable historian when discussing her history of substance use and her mental health.  Even so, the ALJ found that, although Plaintiff's substance use exacerbated her psychotic symptoms, her severe impairments included anxiety disorder, adjustment disorder, and bipolar disorder. AR 19.  While Plaintiff's psychiatric holds occurred during periods of active or suspected substance use, the ALJ acknowledged that Plaintiff was frequently diagnosed with bipolar disorder in addition to substance use disorders during these emergency hospitalizations. AR 26.  Furthermore, the medical record is replete with notations to her exposure to traumatic events (including sexual assault, domestic violence, and homelessness), avoidance, fear, hypervigilance, and recurring distressing memories of traumatic events. AR 1296, 1298, 1418-21.  While the ALJ cites to the jail records to discount Plaintiff's credibility, the jail records show that Plaintiff reported that she had PTSD and PTSD symptoms three weeks apart. AR 942, 948. During the latter session, which

7

occurred after approximately four weeks in custody, Plaintiff denied the need for psychiatric medication, but the clinician noted that her speech was rapid and pressured. AR 948. During that session, Plaintiff reported a history of depression, anxiety, manic episodes, sexual assault, and PTSD symptoms. *Id.* One month later, Plaintiff reported a history of ADHD diagnosis, but she also denied past psychiatric hospitalizations and a history of suicidal ideation, which the clinician noted was contradicted by AFBH records. AR 952-53.  Contrary to the ALJ's finding, the jail records are at least somewhat consistent with Plaintiff's allegations. Thus, the Court finds that the ALJ's reliance on Plaintiff denying all mental health impairments and need for treatment during her period of carceral sobriety to be in error.

Accordingly, the Court finds that the ALJ erred in rejecting Plaintiff's testimony.

### ii.    Care Coordinator's Credibility

Next, Plaintiff argues that the ALJ erred in discounting the third-party functional report of Ari Neulight as "grossly unsupported by the medical evidence of record." (Pl.'s Mot. at 17 (citing AR 26).)  The ALJ found that the physical limitations noted were unsupported, and the Court agrees. *See* AR 26. The ALJ found that the mental limitations noted by Neulight were only supported during periods of intoxication, and "unsupported by the claimant's presentation during periods of carceral sobriety." AR 26. Given that some of the mental limitations were supported by the jail records, the Court finds that the ALJ erred in finding that Neulight's findings were "grossly unsupported by the medical evidence." *See* discussions, *supra,* Part III.B.i. and, *infra,* Part III.C.

### C.    Drug Addiction and Alcoholism ("DAA") Analysis

Plaintiff contends that the ALJ erred by finding that her substance use was a contributing factor material to the determination of disability. (Pl.'s Mot. at 17.) Plaintiff argues that the evidence does not support the ALJ's materiality finding because her mental improvements while in jail or during hospitalization could be attributed to the highly structured environment as opposed to purported sobriety, and the medical evidence does not clearly show that her symptoms would improve significantly in the absence of substance use. *Id*. at 21.

Since this case involves substance abuse, which the Social Security Administration

United States District Court
Northern District of California

("SSA") refers to as drug and alcohol addiction ("DAA"), the ALJ here was required to "apply the appropriate [five-step] sequential evaluation process twice." Social Security Ruling ("SSR") 13-2p, 2013 WL 621536, at *6 (Feb. 20, 2013); *see also Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) (interpreting 20 C.F.R. §§ 404.1535, 416.935).

The two-step process is necessary because a claimant is not eligible for disability benefits if alcohol or drug addiction is a "contributing factor material to" the disability determination. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535 (describing how the agency assesses materiality of drugs and alcohol); Social Security Ruling, SSR 13-2p.; Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism ("DAA"), 78 FR 11939-01. If claimant has another medically determinable impairment and that other impairment is disabling by itself while the claimant is dependent upon or abusing drugs or alcohol, DAA is not material. 78 Fed. Reg. 11941. If DAA causes or effects the claimant's other medically determinable impairments, but the other impairment is irreversible or could not improve to the point of non-disability, DAA is not material. *Id*. If the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorders would improve to the point of non-disability in the absence of DAA, DAA is not material to the determination of disability. 78 Fed. Reg. 11944.

Here, the ALJ determined that Plaintiff suffers from severe impairments including unspecified anxiety, adjustment disorder, unspecified schizophrenia spectrum and other psychotic disorder, amphetamine-induced disorder, bipolar disorder, stimulant-induced psychotic disorder, and polysubstance abuse (including methamphetamine, heroin, ecstasy, and benzodiazepine). AR 19. At step three of the five-step analysis, the ALJ found that, including Plaintiff's substance use, the severity of her impairments meets the criteria of 12.03 (schizophrenia-spectrum and other psychotic disorders) in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

The ALJ further determined that if Plaintiff stopped her substance use, the remaining limitations would not meet or medically equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23. Excluding substance use, the ALJ determined that Plaintiff has: a moderate limitation understanding, remembering or applying information; a moderate limitation interacting with others; a moderate limitation maintaining concentration, persistence or pace; and a

United States District Court
Northern District of California

mild limitation adapting or managing oneself. AR 24-25. Ultimately, the ALJ found that, if Plaintiff stopped her substance use, there were a significant number of jobs that she could perform in the national economy, and, for that reason, she was not disabled under the Social Security Act. AR 26-30.

Plaintiff argues that the ALJ did not properly follow the guidance outlined under SSR 13-2p. (Pl.'s Mot. at 18.) SSR 13-2p states that "[i]mprovement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use." The Commissioner continues, "we may find that a claimant's co-occurring mental disorder(s) is still disabling even if increased support or a highly structured setting reduce the overt symptoms and signs of the disorder…. In addition, a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—with or without treatment for DAA—is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention." 2013 WL 621536 at *12-13. The Court agrees.

In addition to substance use disorders, the ALJ found that Plaintiff has several co-occurring mental disorders. AR 19. Both of Plaintiff's treatment providers, Lifelong Medical Care and BACS, addressed the issue of DAA materiality. Though Nurse Adenji (of Lifelong) stated that additional time was needed to rule out substance-induced anxiety disorder, she also determined that Plaintiff's "substance use suggests this is a female who suffers from trauma/DV and began using as a coping mechanism" and her "presentation strongly aligns" with unspecified anxiety with differential diagnoses of PTSD and ADHD. AR 1398. Similarly, Amanda Joy and Brittany Oliver provided that Plaintiff's work-related mental limitations would remain as severe in the absence of substance use because Plaintiff uses substances to cope with her mental health symptoms. AR 886. As a result, Plaintiff argues that this "evidence does not suggest that Plaintiff's co-occurring mental disorders would not be disabling in the absence of DAA, but rather that her co-occurring mental disorders are independently disabling and contribute to her substance use." (Pl.'s Mot. at 19.)

10

United States District Court
Northern District of California

Given the lack of protracted periods of sobriety, the ALJ largely relies on Plaintiff's purported improvement during a two-month period of carceral sobriety and her symptoms after short hospital stays. AR 25-26. "'[T]he jail environment is highly structured[,]'", which requires that the ALJ wrestle "with that fact in making his determination." *J. C.-H. v. King*, No. 25-CV-01522-AMO, 2026 WL 673581, at *4 (N.D. Cal. Mar. 10, 2026) (quoting *Pittaluga v. Comm'n of Social Security*, 18-cv-03067-VC, 2019 WL 2897849, at *1 (N.D. Cal. July 5, 2019)). Indeed, courts in this district have found that jail records do not provide the most accurate portrayal of a claimant's mental health conditions, because "[a]n inmate may have incentives not to give truthful information, and because the jail environment is highly structured, it may be difficult to meaningfully assess a person's ability to cope with the ordinary demands of everyday life from jail records alone." *Pittaluga*, 2019 WL 2897849, at *1; *see also J.C.-H,* 2026 WL 673581, at *4 (quoting *Pittaluga*).

The ALJ failed to address whether the carceral setting affected Plaintiff's willingness to disclose her impairments or symptoms. While the jail records cited by the ALJ may indicate some symptom improvement, they also indicate that she was still struggling with mental impairments and were not a reliable indicator of her mental health status absent substance use. *See A.M. v. O'Malley*, No. 23-CV-04889-NC, 2025 WL 304461, at *4 (N.D. Cal. Jan. 27, 2025) (finding medical records not reliable because they were inaccurate). As discussed above, while Plaintiff denied mental health impairments and symptoms, she presented with somewhat rapid and pressured speech, and that she was not truthful about her health history on multiple occasions. *See, e.g.,* AR 948.

Though the ALJ found persuasive one ER doctor's contention that "all symptoms…are due to chronic homelessness and substance use," other emergency hospitalization records note that Plaintiff had decompensated "in the context of medication noncompliance and substance use," and doctors frequently diagnosed her with bipolar disorder along with substance use disorders. AR 542, 569, 612, 625. Additionally, one discharge summary after a 6-day stint at Highland Hospital noted that while Plaintiff "appeared to be at baseline" and though she was less hostile and more linear after detoxing from methamphetamine and starting some medication, she remained "entitled

11

and demanding", presented with somewhat pressured speech, and had poor insight, poor judgment, and poor motivation for change. AR 925. Thus, even if Plaintiff's symptoms improved with hospitalization and carceral sobriety, they potentially remain disabling if the improvement could be attributed to medication maintenance or the structured setting.  Consistent with SSR 13-2p, Plaintiff's repeated hospitalizations where she is diagnosed with bipolar disorder and substance use disorders appear to indicate that DAA is not material, but this case must be remanded for the ALJ to perform the requisite analysis.

### D.    RFC Determination

Finally, Plaintiff argues that the ALJ erred in determining her RFC, because he determined that ADHD and PTSD were not severe impairments at Step Two. (Pl.'s Mot. at 22.)  Specifically, Plaintiff argues that the ALJ found those impairments not severe based on Nurse Adenji's listing of them as differential diagnoses even though Dr. Catlin diagnosed Plaintiff with ADHD and PTSD based on her clinical interview and BACS diagnosed Plaintiff with PTSD. *Id.* (citing AR 875, 881.)  Interestingly, the ALJ noted that Nurse Adenji opined that Plaintiff should be evaluated for PTSD. AR 20 (citing AR 1395-99).  Then, in discounting the other opinions, found that the alleged ADHD and PTSD are not severe. AR 20.

In light of the errors noted above, the Court finds that the ALJ also erred in formulating the RFC.

### IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.  Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand is appropriate.  On remand, the ALJ must properly develop the record and evaluate the evidence based on applicable law consistent with this order.

IT IS SO ORDERED.

Dated: March 31, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

12